May it please the court, Walter K. Pyle for Pao Lo, the petitioner. In this case, the trial counsel objected to the dismissal of all the Asian jurors on the panel by the prosecutor. The prosecutor gave reasons, and the judge says, I think these were all legitimate challenges. The prosecutor's reasons were, with respect to Ms. Ingram, Egg-Home, which I think should be our focus here, because the discriminatory intent is most apparent there. The prosecutor said, I could not get her to respond to any of the questions. She was from Manteca. She was an assistant manager. Her husband worked at the depot, and she had kids. And I never got her to respond to another question, and I did not feel I knew her well enough. Let's assume that the prosecutor's reasons can be shown either to be false from the record, which is to say she did respond to the questions, or second, that if he wanted to get to know her better, he should have asked more. So let's assume that we can look at those reasons and say, those aren't good reasons. They're racially neutral on their face, but they're not good reasons. Does that show discriminatory pretext? In other words, could somebody find on this record that the prosecutor was wrong, but wasn't being discriminatory? How do we find discriminatory pretext just from the error? Well, at step two of the Batson procedure, the prosecutor has to give reasons. Right, and he gave racially neutral reasons, and I think the case law says we really don't look to see whether they're right or wrong, because that's at step three when we look at pretext. Right. And now we know they're wrong. They're factually wrong. Does that take us right to pretext, or do we need more to show pretext? That takes us right to pretext. Cases like McLean v. Prunty say an explanation that is not supported by the record or one contrary to the facts constitutes an unreasonable determination of the facts in light of the evidence presented at the state court proceeding, i.e. at the trial. So I want to explore this just a little bit. So let's assume that the prosecutor said, I struck Judge Okuda because she doesn't wear glasses. I don't trust anybody who doesn't wear glasses. And the record shows that she wore glasses. Very strong glasses. She wore very strong glasses. So the prosecutor was mistaken. Would that show that, and assume that for purposes of this discussion that Judge Okuda is part of a protected group, does that show Batson pretext, or does it just show stupidity on the part of the prosecutor? I say it shows Batson pretext. The magistrate judge cited the Chinchilla case and the Burks case at page 81 of the excerpts. Well, what do we do with the fact that the learned district court judge didn't agree with the magistrate? What sort of deference do we give to Judge England's findings that the transcript showed him that the answers were short and evasive? I think he said vague. Do we give some deference to Judge England's findings of the transcript? Well, the short answer is no. We look to Miller L. v. Dredge, which says a prosecutor has to simply state his reasons on the record as best he can and stand or fall on the plausibility of the reasons he gives. And the court goes on to say if the stated reason doesn't hold up, its pretext doesn't fade because a trial judge or an appeals judge, or in this case a federal district court, can imagine a reason that might not have been shown to be false. Well, he didn't imagine a reason. He made a finding of a reason. Do we accord some sort of deference to the fact finding that Judge England made off the transcript that these answers by Ms. Eggholm were evasive or vague? Well, first he made a finding off the transcript, as Your Honor says. The magistrate judge had the benefit of testimony of the prosecutor, and he had the benefit of evaluating that. Johnson v. Finn says the district judge shouldn't make his own conclusions when there's an evidentiary hearing without ordering a new hearing. Second, when we actually look at what the jurors' answers were, she doesn't just say it depends or sometimes. She said, I think it depends on how they describe it, meaning how the event took place. Sometimes it depends on the body movement. You can tell if they're moving. Your Honor, you're arguing her statements for us to determine de novo as opposed to Judge England. Let me ask you this question yet again. Do we give any deference to Judge England's findings as to what the jurors said? No, not when it's based on a cold record. Let me ask you about the standard of review here, because that may make a difference. It wasn't clear to me whether we were reviewing it under IPPA or whether we were reviewing it de novo, because the problem here is that the trial court adjudicated the Batson claim on the merits, but the state habeas court found it was procedurally barred and did not adjudicate it on the merits. Now, your argument in your briefs was the state had waived the procedural bar, in which case we're back to the trial court, right, adjudicating it on the merits. So why aren't we in EDPA land and saying it's a, is what the trial court adjudicated an unreasonable determination of the facts? I think these are two different questions, whether or not the state raises it. Procedural bar is an affirmative defense under Rule 8. Is that the last reasoned decision? There's got to be a decision someplace. The reasoned decision, normally we go back to the last reasoned decision, which was that the, it was not raised on appeal, which is not a decision on the merits. Well, the reasoned decision was the trial court, because the defendant raised a Batson, a constitutional claim, the Batson claim, and the trial court adjudicated it and rejected it. So why isn't that the last reasoned decision of the state court? I don't know. But let me answer that. McLean v. Prunty says if the reasons are cut, gives and givens are contrary to the facts, that's an unreasonable determination of the facts. So if we're in EDPA land, we would be looking at the trial court's determination of the Batson claim and then say, is this objectively unreasonable determination of the facts? And your position is, yes, it is. Yes. Am I understanding that? You're understanding it correctly. But I thought you had a different position from reading your briefs, and maybe I misread them. I thought you said because you never got the transcript, that we had to review this de novo. Am I wrong? Yes. That's, yes, because. Well, that's different than what you told Judge Acuda, so I'm trying to. I'm sorry. I'm conceding. Well, I don't understand how the transcript affected anything, because obviously the trial court didn't need to have the transcript, because the trial court was right there. And if that's the opinion that we're reviewing, then the transcript, even if he had a due process or equal protection transcript claim, it didn't affect the trial court's determination. So why would that affect our analysis here? Well, I say that the determination goes back to the superior court's habeas corpus determination. But that was a, it's procedurally barred. Well, that procedurally barred is a pleading issue. That means the state can't raise it, because they didn't raise an affirmative defense, which you have to plead. Well, no, the state habeas court said petitioner's Batson claim is procedurally barred. He should have raised it on appeal. And right or wrong, that was the decision. It was procedurally barred. So that claim stopped there unless you had the state raise procedural bar, unless you had cause and prejudice to overcome it. But since the state didn't raise the procedural bar, we're back at the trial court's recent decision, and the transcript is irrelevant. Well, I don't think that changes, because the state doesn't raise the procedural bar. No. The procedural bar was a default. Can we go around in a circle here and go to your claim that doesn't involve all these issues? You make an ineffective assistance to counsel claim. Yes. No one, that was exhausted in the state court. There's no procedural bar to raising that claim in federal court. Right. And your claim is that any reasonable attorney would have raised these Batson issues on appeal, and that had a reasonable attorney raised these Batson issues on appeal, there was a reasonable probability of success. Yes. Right? Okay. The state, these get turned down because the district judge thinks that the Batson, that the record was okay. That, in other words, had the Batson claims been raised, they would have lost on appeal. At least in his opinion. Okay. And we're in EDPA land on this stuff, because the state court did deal with it. So tell me why, and that's, I think that's, so tell me why that is a, why you should win on that claim. On the ineffective assistance to counsel. Ineffective assistance to counsel claim, because it strikes me that your burden is somewhat lower on that claim. All you have to do is show a reasonable probability that the Batson claims would have been successful on appeal. With respect to the claim itself, we have a somewhat higher burden. With respect to showing it had a reasonable probability, the fact that the magistrate judge said it was a winning claim. Well, but the district judge said it wasn't. So tell me why it was a winning claim. Because any reasonable, he had written to her, he put this in his habeas petition. No, let's assume the first part of Strickland, I can't imagine an attorney not raising this issue on appeal. So let's assume that the appellate attorney fell below the applicable standard of care. The question is, was there prejudice? Would you likely have won on appeal had this been raised? And just to put another gloss, because we're in EDPA, it's whether the state court could reasonably determine that he wasn't likely to win. In other words, would the state court have come to the same conclusion Judge England did? Yeah, we're in EDPA land. We have to give some deference to the state court. Well, I think we can't speculate what a state court would or would not have done. Well, would it have been unreasonable to turn down your ineffective assistance of counsel claim? Yes, because the record doesn't really support Judge England's claims. The record doesn't, there's nothing vague about her. We know one reasonable jurist, because we think Judge England is reasonable, one reasonable jurist turned it down, right, thought that there wouldn't have been prejudice, it wasn't a substantial claim. I think he's a reasonable jurist, but he was unreasonable in his decision. Nicely done. I take it your argument is that given the fact that the prosecutor's reasons for striking this juror were demonstrably wrong on the record, at least that's your position, that no reasonable court could have found them to be anything but a pretext. If it exercised reason, yes. We're not talking about personalities. No. On that claim, on the ineffective assistance of counsel, on your Batson claim itself, what's your burden? Let's assume we get past all the procedural bars. What do you have to convince us in order to win on your Batson claim? Basically that there's a reasonable likelihood that it was. Well, reasonable likelihood is the Strickland claim. On the Batson claim itself, so let's assume this had all been raised on appeal and adjudicated and we were giving deference to somebody, what would you have to demonstrate to us with respect to the magnitude of the error that no reasonable court could determine that this reason was nonpretextual? I think so, yes. And I hadn't thought about that, and that's my position. I raise that because it seems to me your burdens on ineffective assistance may be slightly less than your burden on the merits. It normally would be. But what I'm saying is that even if we take Judge England's reasons into account, that these – he says they may – the judge may well – the prosecutor may well have considered this or he may have had this in mind. Now – Could you address the second half of the prosecutor's reasoning, which I didn't get to know her very well? Let's assume he'd only said that. If he'd only said that – I didn't get to know her very well. Now, is that – is that a pretext? Can that – is that automatically a pretext? Yes, because the cases, including Miller L. v. Dretke, say if the prosecutor didn't – says he didn't have enough information, why didn't he ask more questions? Suppose the prosecutor just had her mixed up with some other juror and was thinking about another juror when he was answering questions about Ms. Egholm and was dead wrong, as the transcript seems to indicate. Well, he says – Enough to say that must be pretextual. I think it still is. And note that he says, I'll look at my notes here if I have them. And then he says she works in – she's from Manteca. She works – his husband works at the depot. He didn't have her wrong. No. I have five more minutes, four more minutes. I'm out of time.  Thank you. Good morning, Your Honors. May it please the Court. Amanda Carey with the Attorney General's Office on behalf of the respondent. The trial court's decision on the Batson issue was the last reasoned decision of the state court, and thus, epidephrin does apply to the review of that claim. However, even as the district court analyzed the claim under the clear error standard, petitioner fails to establish purposeful discrimination under the third step of Batson in this case. As the district court found, the trial court could have reasonably understood the prosecutor's motivation for striking Ms. Eggholm was that he just did not have a good enough sense of who she was, taking his stated reasons as a whole to mean that he just – he didn't know her well enough based on the answers that she did give. The record establishes that she did answer some questions. He did have some information about her. He even acknowledged that he had some information about her. However, he did not feel that that was enough for him to decide one way or the other that she would be a good juror to sit on this case or not, and that was a reasonable interpretation of the evidence. Well, but that's not what he really said, though. He said she didn't answer my questions and I didn't get to know her. The first thing we now know, I think we can look at the record as well as anybody here, including the trial judge, and it seems to me she did answer his questions. On the second one, couldn't you say that about every juror that you wanted to strike, I didn't get to know her? Doesn't the prosecutor have the obligation to ask enough questions to get to know her? I suppose you could say that about any juror. However, the record supports that that, in fact, was true. Well, how do we know that he didn't get to know her? How does the record support that the prosecutor didn't get to know her? Well, the questions that she answered initially, the initial battery of questions that all the jurors had to answer, I believe only indicated where she was from, what her occupation was, and what her husband's occupation was and that she had children. Not so fast. She answered no through questions three through seven, which is I don't know any of the parties. I don't know anything about the case. I don't have anybody. All those questions which were on the blackboard, she answered no. That is correct, yes, that she didn't have any. There was nothing on those questions. She answered those questions. She did, yes. When the prosecutor said she didn't answer the questions, he was incorrect. Were there any questions that she didn't answer? One? Not that she was specifically asked. No. She didn't answer unasked questions? Well, the questions that the prosecutor posed to the entire jury without singling out an individual juror and saying you answer this question, she never spoke up and responded to any of those questions, but all the questions that she was specifically asked, she did answer. And like the rest of the jury, I mean, the prosecutor said to the jury, do any of you know the judge? And some raised their hands and some didn't. She was no different than the rest of the jury in not specifically answering every question that was posed to the whole panel, right? No, no, not in that sense. So that wasn't where she failed to answer questions. Now, then the prosecutor had the opportunity to do voir dire on her. He did. And tell me what questions she didn't answer during that process. She did answer the questions that he posed to her during that process. However, it was essentially the manner in which she answered the questions. I want to just take the reasons he gave, not the reasons that you're giving. He said she didn't answer my questions. Is there any questions she didn't answer? No. So his stated reason was wrong. If we interpret what he was saying as something different than what he said, then perhaps we could say her answers were short. Was she ever evasive in her answers? It seems to me he posed yes or no questions, and she gave yes or no answers and then expanded when necessary. Evasive, I wouldn't characterize as evasive. Short, possibly vague. So let me just put it this way. So the literal reason, if we took it literally at face value, what the prosecutor said was wrong. Judge England said, well, nobody speaks that precisely in court. Here's probably what was going on. Here's what I understand. Now, how do we take that sort of here's probably what was going on, here's what I understand, can we take that into account? Is there any case that would say it's all right for a reasonable fact finder to look at that? Well, there is no case that says that the words must be taken literally, that that's the only interpretation that the court can take, and the main inquiry in this particular step of Batson is how the trial court understood what the trial court understood the prosecutor's motivation to be. How did the trial court understand it? As I read the record, the trial court said, yeah, you're right. Essentially, didn't quite say, wasn't quite as eloquent as I was just now. But the trial court didn't say, well, I understand you to be saying that perhaps you're uncomfortable with her in some way you haven't articulated, and I find that to be racially neutral. The trial court said, yeah, you're right. She didn't answer the questions. The trial court was wrong. So if we're trying to get into the trial judge's mind, tell me what the trial judge was thinking. All I know is what he said. And that's correct. I mean, there was no specific articulation by the trial judge, however, that he wasn't required to specifically articulate. And if we look at the evidence in this case and what the trial judge had to look at, including something that we don't have the benefit of, which is to observe the demeanor of the prosecutor who was, you know, defending against this challenge, which is often going to be the best evidence of whether the strike was credible, then it is a reasonable interpretation of the evidence that was before. Well, and I asked your opponent a question at the beginning, and Judge Bay asked a question along the same lines. Let's assume the prosecutor was just wrong, as he appears to be on this record, that after he heard the answers, he thought they were vague and unresponsive. But the truth is, when you look at the record, they weren't. If you've ever taken a deposition, you know that feeling. Does that show pretext? No, it doesn't. So opposing counsel said definitely it did. So why doesn't it? It doesn't, because in this case, it is the prosecutor's motivation that we're looking at. And it is how the prosecutor interpreted the answers that she gave to these questions is important. I mean, that is basically the basis for his decision that, you know, I strike this juror. But we have a case in which both the prosecutor and apparently the judge are wrong. In other words, the prosecutor says I did it because she said X or did X, and the judge says, yeah, you're right, she did X or didn't do X, and they're both wrong. So the judge never really considered whether if that reason is wrong, the strike was no good. I mean, so we have a strange record here. The judge didn't say it's not a pretext because I observed your demeanor and I trust you. The judge said, yeah, the reason you're given is absolutely right. She was evasive or didn't give good answers. It read literally. However, that's not our position. Can I just turn briefly to the ineffective assistance of appellate counsel case? Yes. I was struggling as to how to analyze it because the state habeas court did reject that claim on the merits, but its reasoning was, well, there was no evidence about what was said during the voir dire, which, of course, there couldn't be because it denied the motion for a voir dire transcript. So as we're looking at the last reasoned opinion on the ineffective assistance claim, which is the state habeas court, I'm wondering why that isn't an unreasonable determination of the facts. I mean, its procedure for determining the facts there was based on its erroneous denial of the motion, which, as opposing counsel notes, is contrary to Brett in that line of cases. So how could that decision survive if reviewed? Because the state court's denial of the transcripts was not itself unreasonable. Why? Didn't Brett and Gardner and that line of cases say that it's constitutionally required, it's an equal protection violation not to allow an indigent prisoner to have transcripts? How are they distinguishable here and not clearly controlling? Well, in this case, he didn't provide anything. The record that the trial court or that the superior court on state habeas had before it was that simply the petitioner's word that this had actually occurred. Well, but he asked for a transcript. And the district court in this case, whose opinion you otherwise like, I think says you should have given him a transcript. Since he didn't have a transcript, I have to review this case in a way differently than I would have had he had a transcript. Judge Acuda is asking you, the court of appeals turns him down because he says you can't point to any point in the record to support your position. And, of course, he didn't have a transcript at the time, did he? He didn't have the reporter's transcript. So isn't that an unreasonable isn't the denial of that transcript an unreasonable application of Supreme Court law, given all the cases that Judge Acuda cited to you that say that indigent defendants must be given transcripts on request? Not no. It's our position that it was not in this case. However, even if the court were to find. Why not? First off, why isn't it a violation of his constitutional rights? Because he didn't make the appropriate showing that the state court required to receive these transcripts. So California can make defendants who want indigent defendants who want transcripts to pursue appeals make a showing. And what must they show? In this case, he had to show that there was some reason to believe that these this transcript would include information that would. Doesn't it? Doesn't it? I mean, this is the reason we're all here. We had two judges in the district court parsing the transcript. There's three of us parsing the transcript. The transcript is central to the Batson claim. Did he have to file some sort of an affidavit saying, I recall exactly the words that were used and what the judge ruled in order to get a transcript? Not exactly in that way. Then what is it that he needs to do to get the transcript and say, I need a transcript? Well, in this case, I think it's important to point out that it was on state habeas, that this claim had not been raised on direct review, that the attorney in that particular situation. That's his claim, his ineffective assistance of appellate counsel. That's why it wasn't raised on direct appeal. And the procedural bar claim wouldn't matter with respect to the ineffective assistance. That's the whole point. His lawyer didn't raise the claim on appeal. He now comes to the habeas court and says, I had a terrible lawyer. She didn't raise the claim on appeal. And I get a transcript so my new good lawyer can make this argument. And you're saying he had to say more. What more did he have to say? Well, in this particular case, he could have said more. He could have provided or at least attempted to, and then if he was not able to indicate why, to get a declaration from his trial counsel indicating that, yes, this motion was made in the trial court, that the trial counsel believed that this particular record should be transcribed or at least given a reason why he wouldn't be able to provide that additional information. Well, we've taken you away from Judge Yakuta's original question. I'm not sure you've answered it. So assume for a second that you're wrong about not providing the transcript and that that was an error, that was a constitutional error. The court of appeals, the state habeas courts turn him down because he doesn't have a transcript. They say you haven't pointed to anything in the record that we can base our ruling on. Let's assume that he should have had a transcript there. What do we do? Do we say the state court determinations were unreasonable and therefore remand for them to, so we therefore grant the red and presumably he can raise his ineffective assistance of counsel claim or do we do what the district court did, which is look at the transcript which is now available and evaluate his claim? We do what the district court did, and I think the district court did. Okay. And do we evaluate his claim de novo? Assuming everything that you're saying, you know, that. Yeah. In other words, there's nobody to defer to. Correct. Well, then the deference is to the, you have to review the merits of the actual Batson claim. I mean, that is. Yeah, that's right, because it's part of the Strickland claim. Right. And even under clear error review in that circumstance, if you're looking at it. Saying we don't decide whether it's an unreasonable determination of the facts, we decide whether it was an unreasonable application of Strickland, is that what you're arguing? So we would look at the state habeas court's denial of the Strickland claim as being an unreasonable application of Strickland? Because that's the only way I can see we would look at the actual merits of the or the strength of the ineffective assistance claim. That is correct, yes. Strickland is the standard, is the clearly established authority for ineffective assistance of counsel. So you would say we should look at the state habeas court's denial of the ineffective assistance claim and determine whether that was an unreasonable application of Strickland, and your argument is it was an unreasonable application of Strickland because he didn't have a strong Batson claim. Is that your position? Yes. Even though the state court didn't turn it down on that reason? Because Panetta tells us, the Supreme Court's decision, Panetta says we must look at the reasoning of the state court, even if we could have pulled it on some other ground. See, the state court said you lose because you don't have a transcript, essentially. And now you're saying, well, he would have lost had he had one. And can we do that on habeas, or must we just only review what they said? Well, in this case, I think that you can, because really the underlying claim is whether the prosecutor exercised impermissible peremptory challenges. And that's the claim that Petitioner has wanted the court to review from the beginning, and that is the claim that is before this Court. And it would seem kind of counterintuitive that it could be denied on some other ground where the record supports that. That logic doesn't get you all that far in the habeas jurisprudence. Normally we don't substitute our reasoning for those of the state courts. Normally it's the other side arguing that we should. It's a strange situation where the prosecutor is up here saying, we should substitute our judgment. The case of Lowe v. Cain is submitted, and we thank you for your argument. And the court will stand adjourned until tomorrow morning at 9 o'clock.
judges: BEA, IKUTA, HURWITZ